**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

**THREE POINTS CENTER, LLC**;

**THREE POINTS CENTER NORTH CAROLINA, LLC**;

**THREE POINTS PROPERTIES, LLC**;

**THREE POINTS PROPERTIES NORTH CAROLINA, LLC**; and

**THREE POINTS ACADEMY, INC.**,

      Plaintiffs,

v.

**THE ESTATE OF GLENN MICHAEL THIBAULT;**

**THE GLENN M. THIBAULT TRUST DATED MAY  20, 2011,
OR ANY SUBSEQUENT TRUST THAT MAY BE ESTABLISHED
BY GLENN M. THIBAULT'S PERSONAL REPRESENTATIVE ON HIS BEHALF;**

**NICOLE M. THIBAULT AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF GLENN MICHAEL THIBAULT;
TRUSTEE OF THE GLENN M. THIBAULT TRUST DATED MAY 20, 2011;
AND IN HER INDIVIDUAL CAPACITY;**

**G & N CONSULTING, LLC**; and

**AMERICAN GENERAL LIFE INSURANCE COMPANY**,

      Defendants.

---

### COMPLAINT AND JURY DEMAND

---

Plaintiffs Three Points Center, LLC ("TPC"); Three Points Center North Carolina LLC ("TPCNC"); Three Points Properties, LLC ("TPP"); Three Points Properties North Carolina, LLC ("TPPNC"); and Three Points Academy, Inc. ("TPA") (collectively "Plaintiffs"), for their Complaint and Jury Demand ("Complaint") against Defendants the Estate of Glenn Michael Thibault (the "Estate"); the Glenn M. Thibault Trust dated May 20, 2011 or any subsequent Trust that may be established by Glenn M. Thibault's Personal Representative on his behalf (the "Trust"); Nicole M. Thibault as Personal Representative of the Estate of Glenn Michael Thibault, Trustee of the Trust and in her individual capacity ("N. Thibault"); and G & N Consulting, LLC ('G&N") (collectively the "Thibault Defendants"); and American General Life Insurance Company ("AIG") (collectively the "Defendants"), hereby state as follows:

## I.        JURISDICTION AND VENUE

1.      This action is brought pursuant to 18 U.S.C. §§ 1961-1968 and specifically 18 U.S.C. § 1964(c) with respect to Plaintiff's claims for attorneys' fees and costs.   The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331.

2.      This Court also has jurisdiction over claims alleged herein for relief in the nature of a Declaratory Judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, because Plaintiffs seek a determination of their rights to proceed against the Defendants on their legal and equitable claims within this Court, challenging, among other things, the beneficiary and ownership to the insurance proceeds of the AIG Life Insurance Policy and any endorsements or riders thereto on the Life of Glenn M. Thibault ("G. Thibault").

3.      Venue is proper in the United States District Court for the District of Colorado, pursuant to 28 U.S.C. § 1391 because the events giving rise to the instant claims occurred and a substantial part of the property that will be the subject of this action is situated within this District.

4.      The Court has supplemental pendent jurisdiction pursuant to 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and pendent causes of action derive from a common nucleus of operative facts.

## II.      THE PARTIES

5.      TPC is a residential treatment center for adopted teens located in Hurricane, Utah and it is a Colorado limited liability company with G. Thibault as its Registered Agent.[1]

6.      TPCNC is a residential facility that provides habilitation services and other care and treatment to children diagnosed with mental health issues, behavioral issues, and intellectual disabilities; it is a Colorado limited liability company with G. Thibault as its Registered Agent.

7.      TPP is organized for the purpose of owning and managing real property and is a Utah limited liability company.

8.      TPPNC is a Colorado-based limited liability company.

9.      TPA is an accredited academic non-profit school which provides academic services to TPC and its students.  TPA is a Colorado non-profit corporation, and is located in Hurricane, Utah.

10.      The Estate is derived from the Will of Glenn M. Thibault dated May 20, 2011, which has been filed with the District Court of Douglas County, Colorado as Case Number 2022 PR 030515, naming N. Thibault as G. Thibault's Personal Representative.

---

[1] G. Thibault owned 47.9 percent of TPC and all other Plaintiffs.

11.     The Trust was established on May 20, 2011 and N. Thibault is the Trustee.

12.     G&N is a Colorado limited liability company, upon information and belief, jointly owned by G. Thibault and N. Thibault, with its principal office listed as 1068 Cypress Way, Castle Rock, Colorado 80108 and G. Thibault as its Registered Agent.

13.     N. Thibault resides at 1068 Cypress Way, Castle Rock, Colorado 80108; is the Personal Representative of the Estate; and is the Trustee of the Trust.

14.     AIG is a Texas company and is a subsidiary of American International Group, an American finance and insurance corporation, with the Colorado Division of Insurance as its Registered Agent.

## III.     GENERAL ALLEGATIONS

**A. <u>Plaintiffs' CFO was G. Thibault and he and N. Thibault executed Bank Loan Guarantees for Plaintiffs.</u>**

15.     G. Thibault was the Plaintiffs' CFO; a majority owner of all Plaintiffs; and was responsible for all of Plaintiffs' significant financial transactions, including budgets, reporting Plaintiffs' financial position to the various Boards of Directors, and bank-related transactions and interactions.

16.     From May 21, 2018, through September 9, 2021, both G. Thibault and N. Thibault agreed to guarantee various Independent Bank[2] loans made to Plaintiffs totaling approximately $6,500,000.00 (the "Loan Guarantees") by signing continuing Guarantee agreements on the following loans:

---

[2] Independent Bank has filed a claim against the Estate for $5,929,243.75 in the District Court, Douglas County, Colorado.

   A. A May 21, 2018 loan to TPC in the amount of $100,000.00 (Loan No. 2946305005);

   B. A July 17, 2019 loan to TPP in the amount of $3,400,000.00 (Loan No. 2946305005);

   C. An August 13, 2021 loan to TPPNC in the amount of $2,000,000.00 (Loan No. 8050939); and

   D. A September 9, 2021 loan to TPCNC in the amount of $1,000,000.00 (Loan No. 8036581).

17. G. Thibault was paid an annual salary of $150,000.00 as Plaintiffs' CFO.

**B. G. Thibault's Will and Trust.**

18. On May 20, 2011, G. Thibault executed his Will naming N. Thibault as his Personal Representative; provided for specific gifts to his wife N. Thibault; and gave all of the rest of the property he owned at his death to the Trust to be "added to the property of that trust and disposed of in accordance with the terms and any amendments" to the Trust.

19. On May 20, 2011, G. Thibault also executed the Trust naming N. Thibault as Trustee.

20. On October 13, 2022, N. Thibault filed the Will with the Douglas County District Court for probate purposes in Case Number 2022 PR 030515.

**C. G. Thibault Died on November 27, 2021, but during his life he made over $2.9 Million in unauthorized and unapproved money transfers via U.S. Mail or ACH online transactions from bank accounts owned by various Plaintiffs to Defendants G&N, N. Thibault and AIG, including purchasing a $5,000,000.00 AIG Life Insurance Policy and naming N. Thibault as Beneficiary.**

21.     During his life, G. Thibault was married to Defendant N. Thibault and he named her as Personal Representative of his Will and Trustee of his Trust.

22.     Neither the Boards of Directors for TPC nor TPCNC approved G. Thibault to pay consulting fees to G&N and/or N. Thibault.

23.     ITPA's Board of Directors also never approved G. Thibault to pay consulting fees to G&N and/or N. Thibault.

24.     None of Plaintiffs' Boards of Directors ever approved G&N or N. Thibault to perform consulting services for Plaintiffs.

25.     Neither N. Thibault nor G&N ever provided consulting services to Plaintiffs.

26.     G. Thibault died on November 27, 2021. After his death, Plaintiffs discovered that for years, G. Thibault falsely represented that TPC was required by the lending bank (Independent Bank) to pay him a 3% fee on the loans which were the subject of the Loan Guarantees in order to offset any damage to his credit resulting from underwriting the loans.

27.     Likewise, without authority from or approval of Plaintiffs' Boards of Directors, G. Thibault paid G&N the payments listed below and reported them to the Plaintiffs as "consulting fees" for services which neither G&N nor N. Thibault ever provided:

    a.  From June 4, 2015, through September 1, 2022[3] G. Thibault sent $669,195.60 of TPC's money to G&N and/or N. Thibault through 33 separate internet or online banking transfers ("Wire Transactions") of money and/or wrote and sent checks through the United States Postal

---

[3] Despite G. Thibault dying on November 27, 2021, all payments after his date of death resulted from the automatic ACH banking transactions that G. Thibault set up from Plaintiffs' bank accounts to pay Defendants G&N and/or N. Thibault and AGI.

Service ("Postal Service"), other authorized mail depositories and/or other private or commercial interstate carriers (the "Mail"), claiming to the TPC Board and others that Independent Bank was requiring TPC to pay G. Thibault a fee of 3% of the Loan Guarantees.

b.  From July 13, 2015 through January 28, 2022, G. Thibault sent, without TPC Board authority or approval, $1,331,085.00 of TPC's money to G&N and/or N. Thibault through 170 Wire Transactions of money and/or checks sent through the Mail.

c.  From June 13, 2018 through January 28, 2022, G. Thibault sent, without TPA Board authority or approval, $787,365.000 of TPA's money to G&N and/or N. Thibault through 100 Wire Transactions of money and/or checks sent through the Mail.

d.  On December 21, 2020, without TPC Board of Directors authority or approval, G. Thibault completed an application for a $5,000,000.00 Life Insurance Policy through AIG (Policy Number 4209616477) (the "Policy") on his life, naming N. Thibault as 100% beneficiary.  From April 13, 2020 to December 9, 2021, G. Thibault paid for the Policy without TPC Board authority or approval by sending $111,945.62 of TPC's money to AIG through 43 Wire Transactions.

e.  From December 7, 2021, through February 3, 2022, G. Thibault sent, without TPCNC Board authority or approval, $10,000.00 of TPCNC's money to G&N and/or N. Thibault through four (4) Wire Transactions.

**D.** **Neither G&N nor N. Thibault provided consulting services to Plaintiffs and Independent Bank never charged or imposed a 3% Fee for the Loan Guarantees.**

28.     Neither G&N nor N. Thibault were contracted to provide consulting services to Plaintiffs, never presented a contract for consulting services to any of the Plaintiffs' Boards of Directors for approval, and none of Plaintiffs' Boards of Directors approved contracts for consulting services for Plaintiffs from G&N or N. Thibault.

29.     Despite G. Thibault transferring millions of dollars over the years from Plaintiffs' various bank accounts by mailing checks through the Mail or through Wire Transactions to G&N and/or N. Thibault, G. Thibault never sought authority from or approval of any of Plaintiffs' Boards of Directors to contract or hire G&N or N. Thibault to perform consulting services for Plaintiffs.

30.     Contrary to G. Thibault's representations to Plaintiffs that Independent Bank required a 3% fee on the guarantees issued on the Loans by G. Thibault or N. Thibault in order to avoid negative credit implications for G. Thibault or N. Thibault, and for which G. Thibault paid $669,195.60 to himself and N. Thibault from the TPC bank account, Plaintiffs learned after G. Thibault's death that Independent Bank never charged or required such a fee, as represented by G. Thibault.

## IV.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Civil Racketeering Influenced and Corrupt Organizations Act ("RICO") – N. Thibault (Individually, and as Trustee of the Trust and Personal Representative of the Estate) and G&N**

31.     Plaintiffs incorporate all proceeding paragraphs as if fully set forth herein.

32.     From June 4, 2015 through February 2, 2022, G. Thibault conducted a pattern of racketeering activity when, without authority from or approval of Plaintiffs' Boards of Directors, he took money from various Plaintiffs' bank accounts and sent the money on at least 350 occasions, through the Postal Service, other authorized mail depositories and/or other private or commercial interstate carriers or through internet, online banking transfers or ACH bank transactions, to:

      a.  G&N and/or N. Thibault for alleged consulting services that were not performed for Plaintiffs;

      b.  AIG to purchase the Life Insurance Policy on G. Thibault's life naming N. Thibault as beneficiary of the Life Insurance Policy; and

      c.  G. Thibault and/or N. Thibault for alleged payments of a 3% bank fee for the Loan Guarantees when Independent Bank never charged or required such a fee in order to offset any negative impact on G. Thibault's and/or N. Thibault's credit.

33.     G&N and/or N. Thibault and AIG each received and retained the money G. Thibault sent.

34.     G. Thibault's actions of taking Plaintiff's money and sending it through the Mail and/or Wire Transactions to G&N and N. Thibault, and G&N's and N. Thibault's acceptance of Plaintiff's money were intentional acts and constitute an enterprise that violates the law.  Said acts constitute acts for which they could be chargeable, indictable or punishable for violations of the law.

35.     G. Thibault's, G&N's, and N. Thibault's actions as described above damaged Plaintiffs by causing them to lose at least $2,909,591.22 and the use of those funds for the

continued operation of Plaintiffs' businesses, entitling Plaintiffs to treble damages Under 18 U.S.C. § 1964(c), the cost of this lawsuit, and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

**Conversion – N. Thibault (Individually, and as Trustee of the Trust, and as Personal Representative of the Estate); the Trust; the Estate; G&N**

36.      Plaintiffs incorporate all preceding paragraphs as it fully set forth herein.

37.      As set forth above, G. Thibault obtained, through fraudulent or otherwise wrongful means, $669,195.60 from TPC in the guise of fees which were charged or required by Independent Bank on the Loan Guarantees, which were not actually charged or imposed by Independent Bank as part of the terms and conditions of the Loan Guarantees, or otherwise chargeable to TPC.

38.      G. Thibault obtained, through wrongful means, $1,331,085.00 from TPC, which he represented were "consulting fees" for consulting work by G&N and N. Thibault which was never actually performed and remitted these amounts to G&N and N. Thibault without TPC's knowledge or approval.

39.      G. Thibault obtained, through wrongful means, $787,365.00 from TPA, which he represented were "consulting fees" for consulting work by G&N and N. Thibault which was never actually performed and remitted these amounts to G&N and N. Thibault without TPA's knowledge or approval.

40.      G. Thibault obtained, through wrongful means, $10,000.00 from TPCNC, which he represented were "consulting fees" for consulting work by G&N and N. Thibault which was never actually performed and remitted these amounts to G&N and N. Thibault without TPCNC's knowledge or approval.

41.      G. Thibault obtained, through wrongful means, $111,945.62 from TPC, which he used to purchase and pay premiums towards the Policy, to which N. Thibault is the sole named beneficiary and to which, upon information and belief, AIG has paid to N. Thibault or will pay to N. Thibault $5,000,000.00 in life insurance benefits as a result of G. Thibault's death.  TPC never authorized or approved of G. Thibault's purchase of the Policy or payment of premiums to AIG with TPC's funds.

42.      The above-referenced amounts constitute property which rightfully belongs to Plaintiffs.

43.      The above-referenced amounts are currently in the possession or under the control of N. Thibault (either individually, or as Trustee, or as Personal Representative), the Trust, the Estate, and/or G&N.

44.      Defendants N. Thibault (in her individual capacity and as the Trustee and the Personal Representative), the Trust, the Estate, and G&N, without authority, have exercised dominion and control over the property.

45.      By and through undersigned counsel, Plaintiffs demanded return of the above-described property on November 21, 2022.

46.      As of the filing date of this Complaint, N. Thibault, the Trust, the Estate, and G&N have refused to return the property demanded and which rightfully belongs to Plaintiffs.

47.      By refusing to return the property demanded and which rightfully belongs to Plaintiffs, N. Thibault, the Trust, the Estate, and G&N have committed conversion of the property.

48.      Plaintiffs have been damaged by the above-named Defendants' conversion of the subject property in the amounts described above and in further amounts to be proven at trial.

## THIRD CLAIM FOR RELIEF

### Unjust Enrichment – All Defendants

49.     Plaintiffs incorporate all preceding paragraphs as it fully set forth herein.

50.     As set forth above, Defendants N. Thibault (individually and as Trustee and Personal Representative), the Trust, the Estate, and G&N have received a benefit from one or more Plaintiffs and at Plaintiffs' expense.

51.     This benefit is in the form of monies taken or otherwise diverted by G. Thibault from Plaintiffs TPC, TPA, and TPCNC under false pretenses, and characterized as consulting fees owed to N. Thibault and/or G&N.

52.     This benefit is in the form of Loan Guarantee "fees" paid by TPC to G. Thibault and/or N. Thibault, which G. Thibault falsely and fraudulently represented were charged or required by Independent Bank as the lender in order to offset any negative credit effects resulting from the Loan Guarantees.

53.     These benefits have been received by and are currently held by Defendants N. Thibault, the Trust, the Estate, and/or G&N, both prior to and as a result of G. Thibault's death.

54.     These Defendants' retention of the above-described benefits is under circumstances which would make it unjust for the Defendants to retain the benefits without paying.

55.     In addition, AIG has received a benefit from TPC, at TPC's expense.

56.     This benefit is in the form of premiums and any other payments made to AIG by G. Thibault, using TPC's funds, for the Policy—without permission or authorization from TPC.

57.     AIG's retention of the above-described benefits is under circumstances which would make it unjust for AIG to retain the benefit without paying.

58.     In addition, N. Thibault has received a benefit in the form of all or part of the life insurance proceeds payable under the Policy—again purchased by G. Thibault with TPC's funds, without permission or authorization from TPC.

59.     N. Thibault's retention of the above-described benefit is under circumstances which would make it unjust for N. Thibault to retain the benefit without paying.

60.     Plaintiffs have been and continue to be damaged by the Defendants' unjust enrichment and retention of the above-described benefits.

61.     Plaintiffs are entitled to all monetary amounts unjustly held by Defendants, in amounts to be proven at trial.

62.     Plaintiffs are entitled to all necessary relief in equity; including, but not limited to, a constructive trust and/or equitable lien over any and all benefits unjustly retained by one or more Defendants in order to prevent the dissolution or dissipation of the benefits; such as, by way of example, a constructive trust/equitable lien over any paid or unpaid life insurance proceeds under the Policy.

## FOURTH CLAIM FOR RELIEF

**Breach of Contract (Third-Party Beneficiary) – N. Thibault (Individually, and as Trustee of the Trust and Personal Representative of the Estate); the Estate**

63.     Plaintiffs incorporate all preceding paragraphs as it fully set forth herein.

64.     On May 21, 2018, both G. Thibault and N. Thibault, in their individual capacities, signed and executed Commercial Guaranty agreements on a loan by Independent Bank or its predecessor in interest to TPC in the principal amount of $100,000.00 (Loan No. 2946305005).

65.     On July 17, 2019, both G. Thibault and N. Thibault, in their individual capacities, signed and executed Continuing Guaranty agreements on a loan by Independent Bank to TPP in the principal amount of $3,400,000.00 (Loan No. 2946305006).

66.     On August 13, 2021, both G. Thibault and N. Thibault, in their individual capacities, signed and executed Continuing Guaranty agreements on a loan by Independent Bank to TPPNC in the principal amount of $2,000,000.00 (Loan No. 8050939).

67.     On September 9, 2021, both G. Thibault and N. Thibault, in their individual capacities, signed and executed Continuing Guaranty (Unlimited) agreements on a loan by Independent Bank to TPCNC in the principal amount of $1,000,000.00 (Loan No. 8036581).

68.     In relevant part, by virtue of the Loan Guarantees, both G. Thibault and N. Thibault unconditionally guaranteed repayment of the above-referenced Loans to Independent Bank and/or its predecessor in interest, jointly and severally, including principal amounts, accrued and unpaid interest, and collection costs and legal expenses (including attorneys' fees) incurred by Independent Bank in connection with recouping amounts owed under the Loans.

69.     The Loan Guarantees permit Independent Bank as the lender to recover amounts owed under the Loans from one or more guarantors (including G. Thibault and N. Thibault) without first attempting to collect from the borrower or any other guarantor to the Loan.

70.     As to G. Thibault, the Loan Guarantees are enforceable as to his heirs, successors, and assigns, including the Trust and the Estate.

71.     The Loan Guarantees constitute valid and binding contracts which, upon information and belief, have not been revoked by G. Thibault or N. Thibault pursuant to or in accordance with the Loan Guarantees' terms.

72.     By their express and implied terms, as well as the facts and circumstances surrounding the formation and execution of the Loan Guarantees, the Loan Guarantees were entered into by Independent Bank and/or its predecessor in interest, and G. Thibault and N. Thibault, respectively, with the intent to benefit the named borrowers to the Loans – including Plaintiffs TPC, TPP, TPPNC, and TPCNC.

73.     G. Thibault and N. Thibault have breached the terms of the Loan Guarantees by failing to repay amounts owed under the Loans upon demand from Independent Bank.

74.     Plaintiffs TPC, TPP, TPPNC, and TPCNC have suffered damages as a result of G. Thibault's, the Estate's, and N. Thibault's breach of the Loan Guarantees including, but not limited to, unpaid and accelerated Loan amounts demanded from Independent Bank, accrued and unpaid interest on the Loans, and collection costs and expenses (including attorneys' fees) demanded by Independent Bank.

75.     Pursuant to the Will of G. Thibault, all of his property (including the Loan Guarantees) poured over into the Trust upon his death and, accordingly, any damages incurred by Plaintiffs resulting from G. Thibault's breach of the Loan Guarantees is recoverable from the Trust assets.

76.     As third-party beneficiaries to the Loan Guarantees, Plaintiffs TPC, TPP, TPPNC, and TPCNC have standing to bring their breach of contract claim against N. Thibault and the Estate, as further described above.

## FIFTH CLAIM FOR RELIEF

**Breach of Fiduciary Duties – N. Thibault (as Trustee of the Trust, and as Personal Representative of the Estate); the Estate.**

77.     Plaintiffs incorporate all preceding paragraphs as it fully set forth herein.

78.     By virtue of his status as Chief Financial Officer and majority owner of the Plaintiffs, as well as his degree of control over the assets, liabilities, debts, and contractual obligations of the Plaintiffs, G. Thibault was entrusted to act for the benefit of or in the interests of the Plaintiffs.

79.     G. Thibault had the legal power and authority to act on behalf of the Plaintiffs to further the interests of the Plaintiffs in the course of their operations.

80.     As a result of the power, authority, and trust granted to G. Thibault by the Plaintiffs, G. Thibault acted in a fiduciary capacity for the benefit of the Plaintiffs and owed the Plaintiffs fiduciary duties of care and loyalty.

81.     G. Thibault breached his fiduciary duties of care and loyalty to the Plaintiffs when he committed the following, non-inclusive acts against the Plaintiffs:

a.  Misrepresented to TPC that Independent Bank required TPC to pay a 3% fee on the Loan Guarantees to G. Thibault in order to avoid damage to his credit for guaranteeing the Loans, collected such "fees" from TPC, and kept the fees for himself and/or N. Thibault;

b.  Diverted funds from TPC, TPA, and TPCNC under the guise of "consulting fees" to N. Thibault and G&N for work which was never performed—all without knowledge, permission, or authorization from TPC, TPA, or TPCNC;

c.  Used TPC funds without authorization or permission to purchase the Policy for himself and naming N. Thibault as sole beneficiary to the Policy;

82.     The Estate and N. Thibault (as Trustee of the Trust and Personal Representative of the Estate) are G. Thibault's successors in interests and may be held liable for breaches of fiduciary duties committed by G. Thibault.

83.     Plaintiffs have suffered and will continue to suffer actual damages caused by G. Thibault's breaches of fiduciary duties, in amounts to be proven at trial.

**<u>SIXTH CLAIM FOR RELIEF</u>**
**Civil Theft (Colo. Rev. Stat. § 18-4-405)**
**N. Thibault (Individually, and as Personal Representative of the Trust and the Estate); the Estate**

84.     Plaintiffs incorporate all preceding paragraphs as it fully set forth herein.

85.     As set forth above, G. Thibault and N. Thibault knowingly obtained, retained, and exercised control over at least $2,900,000 which G. Thibault took without authorization and at times using deception, and did so intentionally and knowingly to permanently deprive Plaintiffs of the following property:

> a.   $669,195.60 of TPC's money when G. Thibault claimed to TPC's Board that the money was a 3%  fee on the Loan Guarantees by Independent Bank and that TPC needed to pay G. Thibault such a fee in order to avoid damage to his credit. There was no 3% fee required or imposed for such purposes by Independent Bank, and but for the deception, the TPC Board would not have authorized or approved the 3% Loan Guarantee  charges;

> b.   $1,331,085.00 of TPC's money when G. Thibault claimed the money represented "consulting fees" for consulting work by G&N and N.

Thibault which never happened and which was not otherwise authorized by TPC;

c. $787,365.00 from TPA when G. Thibault claimed the money represented "consulting fees" for consulting work by G&N and N. Thibault which never happened and which was not otherwise authorized by TPA;

d. $10,000.00 of TPCNC's money when G. Thibault claimed the money represented "consulting fees" for consulting work by G&N and N. Thibault which never happened and which was not otherwise authorized by TPCNC; and

e. $111,945.62 of TPC's money when G. Thibault used the money to purchase and pay premiums towards the Policy, to which N. Thibault is the sole named beneficiary and to which, upon information and belief, AIG has paid to N. Thibault or will pay to N. Thibault $5,000,000.00 in life insurance benefits as a result of G. Thibault's death.

86. The above referenced amounts constitute property which belongs to Plaintiffs, as further described above.

87. The above-referenced amounts are currently in the possession or under the control of N. Thibault, the Trust, the Estate, and/or G&N.

88. Defendants N. Thibault (in her individual capacity and in her capacity as the Trustee of the Trust and the Personal Representative of the Estate) and the Estate have exercised dominion and control over the property with the intent to permanently deprive Plaintiffs of their property.

89.     As further described herein, by receiving the stolen property which is the subject of this civil theft claim with the knowledge that the property was stolen by G. Thibault, N. Thibault (both individually and in her capacity as the Trustee and Personal Representative) manifested the specific intent to permanently deprive Plaintiffs of the property.

90.     Plaintiffs have and continue to be damaged in at least the amount of $2,900,000 and are entitled to treble damages plus costs of the action and reasonable attorneys' fees pursuant to C.R.S. § 18-4-405.

### SEVENTH CLAIM FOR RELIEF
**Conspiracy to Commit Civil Theft – N. Thibault (Individually, and as Personal Representative of the Trust and the Estate)**

91.     Plaintiffs incorporate all preceding paragraphs as it fully set forth herein.

92.     G. Thibault and N. Thibault, together and acting in concert, pursuant to a meeting of the minds between them, conspired to steal millions of dollars from Plaintiffs over a period of years and committed multiple unlawful overt acts intended to accomplish their conspiracy.

93.     G. Thibault and N. Thibault conspired to steal and otherwise misappropriate $1,331,085.00 from TPC under the guise of "consulting fees" to be paid to N. Thibault and/or G&N for consulting work which was neither authorized by TPC nor performed by N. Thibault or G&N, and acted upon that conspiracy when G. Thibault stole said funds and directed them to N. Thibault and G&N.

94.     G. Thibault and N. Thibault conspired to steal and otherwise misappropriate $669,195.60 from TPC under the guise of Loan Guarantee fees charged or required by Independent Bank, which were never actually charged or required by the bank, and acted upon that conspiracy when G. Thibault stole said funds and directed them to himself and N. Thibault.

95.     G. Thibault and N. Thibault conspired to steal and otherwise misappropriate $787,365.00 from TPA under the guise of "consulting fees" to be paid to N. Thibault and/or G&N for consulting work which was neither authorized by TPA nor performed by N. Thibault or G&N, and acted upon that conspiracy when G. Thibault stole said funds and directed them to N. Thibault and G&N.

96.     G. Thibault and N. Thibault conspired to steal and otherwise misappropriate $10,000.00 from TPCNC under the guise of "consulting fees" to be paid to N. Thibault and/or G&N for consulting work which was which was neither authorized by TPCNC nor performed by N. Thibault or G&N, and acted upon that conspiracy when G. Thibault stole said funds and directed them to N. Thibault and G&N.

97.     G. Thibault and N. Thibault conspired to steal and otherwise misappropriate $111,945.62 of TPC's money in order to purchase and pay premiums towards the Policy for N. Thibault's benefit, and acted upon that conspiracy by purchasing the Policy with TPC's funds.

98.     N. Thibault's acts and omissions as a conspirator in furtherance of the above-described conspiracy to commit civil theft proximately caused the Plaintiffs damages in at least the amount of $2,900,000.00, and in amounts to be further proved at trial.

## EIGHTH CLAIM FOR RELIEF
### Fraud - N. Thibault (As Trustee of the Trust and Personal Representative of the Estate)

99.     Plaintiffs incorporate all preceding paragraphs as it fully set forth herein.

100.    As further described in the Complaint, G. Thibault was an individual, continuing guarantor of loans made by Independent Bank and its predecessor in interest to TPC, TPP, TPPNC,

and TPCNC by virtue of Guaranty agreements entered into by him on May 21, 2018, July 17, 2019, August 13, 2021, and September 9, 2021.

101.    From the inception of the Loan Guarantees to the time of his death, G. Thibault represented to TPC that Independent Bank imposed or required a 3% fee on his individual guarantees of the Loans, and that TPC needed to pay G. Thibault such fees in order to avoid any resulting damage to his credit by virtue of his individual Loan Guarantees.   TPC paid G. Thibault said "fee" amounts pursuant to G. Thibault's representations.

102.    At G. Thibault's direction, G. Thibault, G&N and/or N. Thibault received 33 individual payments of the 3% Loan Guarantee "fees" from TPC under the guise that Independent Bank required such payments.

103.    Independent Bank did not, in fact, ever impose, charge, or require a 3% fee on the Loan Guarantees for the credit-related reasons asserted by G. Thibault.

104.    G. Thibault knew that Independent Bank never charged a 3% fee on the Loan Guarantees, and made the above representations to TPC while knowing that they were false at the time the representations were made.

105.    G. Thibault made these false representations to TPC with the intent for TPC to act on the representations by paying G. Thibault for the "fees" which were never, in fact, imposed or required by Independent Bank.

106.    TPC acted upon G. Thibault's false representations by paying G. Thibault for "fees" which G. Thibault contended were charged or required by Independent Bank in order to avoid damage to G. Thibault's credit.

107.     These false representations were material, as they resulted in TPC's payment of no less than $669,195.60 in alleged "fees" to G. Thibault, G&N and/or N. Thibault, which were subsequently kept by G. Thibault and which became a part of the Trust and the Estate, to which N. Thibault is now the Trustee and Personal Representative, respectively.

108.     TPC has and continues to be damaged in at least the amount of at least $669,195.60 as a direct and proximate result of G. Thibault's fraudulent acts, and in further amounts to be proven at trial.

## NINTH CLAIM FOR RELIEF
### Declaratory Judgment (Colo. Rev. Stat. §§ 13-51-106 and §§ 13-51-108(1); Fed. R. Civ. P. 57; 28 U.S.C. §§ 2201 and 2202) – AIG and N. Thibault (Individually)

109.     Plaintiffs incorporate all preceding paragraphs as it fully set forth herein.

110.     As set forth above, AIG issued the life insurance Policy in the amount of $5,000,000.00 after G. Thibault purchased the Policy with TPC's funds, without authorization from TPC.

111.     The Policy names N. Thibault as sole beneficiary to the life insurance proceeds payable under the Policy.

112.     There exists an actual controversy regarding the parties' rights and obligations under the Policy because, given that the Policy was wrongfully purchased with TPC's funds and under false pretenses, the parties dispute who should be the proper and legal beneficiary of the Policy proceeds and TPC has suffered injury in the amount of proceeds already paid or that will be paid to N. Thibault as beneficiary.

113.     TPC requests a judgment declaring TPC as the sole beneficiary of the Policy; the rightful owner of the life insurance proceeds and benefits payable by AIG under the Policy; and as

the lawful purchaser of the Policy.  TPC also requests a judgment declaring that TPC is entitled to all benefits which have been paid or are due to be paid under the Policy.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants on Plaintiffs' claims as follows:

A.    Awarding Plaintiffs all general, compensatory, incidental, and prospective damages, in law or in equity, in amounts as proved at trial;

B.    Awarding Plaintiffs treble damages, their costs, and reasonable attorneys' fees under 18 U.S.C. § 1964(c);

C.    Awarding Plaintiffs punitive and exemplary damages for Defendants' intentional acts in an amount sufficient to deter Defendants from any further wrongdoing in violation of federal and Colorado law, including but not limited to treble damages pursuant to C.R.S. § 18-4-405;

D.    Awarding Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and/or C.R.S. § 18-4-405;

E.    Awarding and fashioning for Plaintiffs all necessary and proper equitable relief, including but not limited to a constructive trust and/or equitable lien over all property unjustly held by one or more Defendants;

F.    Entering an order declaring the parties' respective rights and obligations under the Policy, including a declaration that Plaintiff TPC, as the lawful purchaser of the Policy, is entitled to all benefits which have been paid or are due to be paid under the Policy;

G.     Entering an order for an immediate accounting of all monies and property held by both the Estate and the Trust;

H.     Such other and further relief as the Court deems just and proper.

## VI.     JURY TRIAL DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Dated this 23rd day of November, 2022.

**CAMPBELL LITIGATION, P.C.**

By: /s/ *Stacey A. Campbell*
   Stacey A. Campbell
   Robert Thomas
   1410 North High Street
   Denver, Colorado 80218
   Tel: (303) 536-1833
   Email: stacey@campbell-litigation.com
     robert@campbell-litigationo.com

**ATTORNEYS FOR PLAINTIFFS**