# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03053-RM-MEH

**THREE POINTS CENTER, LLC;**
**THREE POINTS CENTER NORTH CAROLINA, LLC;**
**THREE POINTS PROPERTIES, LLC;**
**THREE POINTS PROPERTIES NORTH CAROLINA, LLC; and**
**THREE POINTS ADADEMY, INC.**

Plaintiffs,

v.

**MARCIE R. MCMINIMEE,**
**IN HER CAPACITY AS SPECIAL ADMINISTRATOR OF THE ESTATE OF GLENN MICHAEL THIBAULT, a.k.a. GLENN M. THIBAULT, a.k.a. GLENN THIBAULT, DECEASED;**

**THE GLENN M. THIBAULT TRUST DATED MAY 20, 2011, OR ANY SUBSEQUENT TRUST THAT MAY BE ESTABLISHED BY GLENN M. THIBAULT'S PERSONAL REPRESENTATIVE ON HIS BEHALF;**

**NICOLE M. THIBAULT AS TRUSTEE OF THE GLENN M. THIBAULT TRUST DATED MAY 20, 2011; AND IN HER INDIVIDUAL CAPACITY; and**

**G & N CONSULTING, LLC,**

Defendants.

---

## PLAINTIFFS' RESPONSE TO DEFENDANTS NICOLE M. THIBAULT AND G&N, LLC'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT [ECF NO. 24]

---

Plaintiffs Three Points Center, LLC ("TPC") *et al.*, by and through undersigned counsel, respectfully submit the following response in opposition to Defendant Nicole Thibault's (in her individual capacity and as Trustee of the Trust dated May 20, 2011 ("Ms. Thibault's")) and G&N Consulting, LLC's ("G&N's") (collectively "Defendants'") March 7, 2023 Motion to Dismiss

1

Plaintiffs' Amended Complaint (Dkt. 36, the "Motion") and, in support thereof, state as follows:

## I. INTRODUCTION.

Throughout the Motion, Defendants either mischaracterize the facts as alleged by Plaintiffs in support of their claims, or simply assert their own version of the facts in order to declare Plaintiffs' allegations "conclusory" or "implausible," which is completely contrary to established legal standards governing motions to dismiss under FED. R. CIV. P. 12(b)(6). Defendants plainly cannot overcome that Plaintiffs have sufficiently alleged facts to state plausible claims for relief— including Plaintiffs' first claim for relief under 18 U.S.C. § 1962(c) ("RICO")—and that the court is presently obligated to take all of Plaintiffs' well-pleaded factual allegations as true.

Alternatively, Defendants rely on several inapplicable or erroneous arguments and theories to argue that the Court lacks jurisdiction over Plaintiffs' claims under FED. R. CIV. P. 12(b)(1). First, Plaintiffs contend that an arbitration clause within TPC's August 21, 2021 Amended and Restated Limited Liability Company Agreement (Dkt. 36-4, the "Operating Agreement") requires *dismissal* of the Amended Complaint, notwithstanding that 1) the claims asserted by Plaintiffs have absolutely nothing to do with the Operating Agreement, and; 2) even if some or all of the claims must be arbitrated, a stay of proceedings is the proper course of action under the Federal Arbitration Act, rather than outright dismissal.

Second, Defendants misconstrue the scope and application of the judicially-created probate exception to subject matter jurisdiction, as fully articulated in *Marshall v. Marshall*, 547 U.S. 293 (2006) (the "Probate Exception"). None of Plaintiffs' claims would require the court to 1) directly participate in the probate or annulment of the will of Glenn Thibault ("Mr. Thibault"); 2) administer Mr. Thibault's estate, which is the subject of *In re: Estate of Glenn Michael Thibault*

(Case No. 2022 PR 30515 (the "Probate Matter")) pending in Douglas County District Court (the "Probate Court") or; 3) directly dispose of property in the Probate Court's custody. Defendants instead misconstrue a single paragraph of the Amended Complaint relating to a possible constructive trust over life insurance proceeds already paid to Ms. Thibault (outside of the Probate Matter) as the beneficiary to the AIG life insurance policy purchased by Mr. Thibault with stolen funds (the "Policy") to argue that Plaintiffs are seeking a constructive trust over *all* property under the control of the Probate Court in violation of the Probate Exception, which is plainly false. Further, Plaintiffs' request for an accounting of money and property currently held by Mr. Thibault's Estate and the Trust does not implicate the Probate Exception because it would not interfere with or otherwise dispose of any property currently subject to probate.

Last, as limited to claims against Ms. Thibault as Trustee of the Trust,[1] Defendants' arguments regarding ripeness are based *solely* on Defendants' self-serving and completely unsupported allegation that the Trust was (and is) unfunded and, therefore, there is no present case or controversy to be decided regarding Ms. Thibault as Trustee. Such arguments lack support in both law and fact, and are otherwise completely contrary to the standards for motions to dismiss under both Rule 12(b)(6) and Rule 12(b)(1). The Motion must be denied.

## II.    LEGAL STANDARDS.

### a.    Motions to Dismiss Under FED. R. CIV. P. 12(b)(6).

Under FED. R. CIV. P. 12(b)(6), at the pleading stage, all allegations of material fact in support of the claims and as alleged in the operative complaint must be accepted as true and viewed "in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th

---

[1] "The Trust" refers to the May 20, 2011 Glenn M. Thibault Trust, to which Ms. Thibault is the Trustee. Dkt. 24 ¶ 11.

Cir. 2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Motions to dismiss under Rule 12(b)(6) are viewed with disfavor. *Rigg v. City of Lakewood*, 896 F. Supp. 2d 978, 980 (D. Colo. 2012). The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the operative complaint alone is legally sufficient to state a claim for which relief may be granted. *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). Courts should consider not only the complaint but also the exhibits attached thereto and "documents incorporated into the complaint by reference." *Smith*, 561 F.3d at 1098 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)). However, consideration of materials outside of the complaint for purposes of a Rule 12(b)(6) motion to dismiss will convert the motion into one for summary judgment under FED. R. CIV. P. 56. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

### b. Motions to Dismiss Under FED. R. CIV. P. 12(b)(1).

A motion to dismiss based on the Court's lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) can take one of two forms: 1) a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction, and; 2) a challenge to the facts upon which subject matter jurisdiction is based beyond the complaint's allegations. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). The former challenge requires the court to accept the complaint's allegations as true, while the latter permits the court to exercise discretion to allow affidavits and other documents to resolve the disputed jurisdictional facts. *Id.* References to

outside documentation do not convert a Rule 12(b)(1) motion into a motion for summary judgment under FED. R. CIV. P. 56.  *Id.*

## III.  ARGUMENT.

### a.  Defendants Provide No Supporting Evidence that Plaintiffs' Claims Must Be Arbitrated, and Staying or Dismissing the Action Due to an Arbitration Clause in TPC's Operating Agreement is Not Required.

Defendants assert that § 16.9 of TPC's Operating Agreement[2] deprives the Court of jurisdiction over the lawsuit under FED. R. CIV. P. 12(b)(1) because the agreement requires Plaintiffs' claims against Ms. Thibault and G&N to be submitted to binding arbitration.  Dkt. 36 at pp. 4, 7; *see also* Dkt. 36-4, § 16.9.

Tellingly, Defendants make no effort to describe how or why any of Plaintiffs' claims have any relation to the Operating Agreement, except for the fact that Ms. Thibault is now a member of TPC as Mr. Thibault's successor.  Dkt. 36 at p. 7.  G&N is not even a party to the Operating Agreement in any capacity.  Dkt. 36-4.  By Defendants' interpretation of the arbitration clause, however, *any* dispute between Plaintiffs and Defendants could and should be arbitrated, notwithstanding that the clause *only* relates to claims arising out of, under, in connection with, or in relation to the TPC Operating Agreement.  *See* Dkt. 36 at p. 7 ("A dispute most certainly has arisen.  Thus, it must be submitted to binding arbitration . . . .").[3]

---

[2]"Any dispute or controversy arising under, out of, or in connection with or in relation to this Agreement, or the breach thereof, or any offering of Units or an investment in the Units shall be determined and settled by binding arbitration to be held in the County of Denver, Colorado, in accordance with the then applicable rules of the American Arbitration Association, and judgment entered upon the award rendered may be enforced by appropriate judicial action." Dkt. 36-4, § 16.9.

[3]Defendants suggest that Plaintiffs omitted reference to the Operating Agreement and its arbitration language in order to "avoid arbitration." Dkt. 36 at p. 4. This insinuation is false. Plaintiffs did not mention the arbitration provisions in the Operating Agreement because the Operating Agreement has *nothing to do* with the claims asserted in the Amended Complaint.

The arbitration clause at issue is not limitless, and it expressly grounds the scope of arbitration to the Operating Agreement itself. *See, e.g. In re Jiffy Lube Intern., Inc., Text Spam Litigation*, 847 F. Supp. 2d 1253, 1262-63 (S.D. Cal. 2012) (an arbitration clause in a contract requiring arbitration of a tort action arising from a completely separate incident would "clearly be unconscionable"). In other words, while the scope of arbitrable disputes is typically broad, the claims which a party seeks to arbitrate must still be reasonably related to the contract at issue. *See Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003) (reading an arbitration agreement as limitless leads to "absurd results," such as if a defendant murdered the plaintiff and the plaintiff's survivors brought a wrongful death action, the action would have to be arbitrated); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995) (not all disputes between parties who include an arbitration clause in a contract are subject to arbitration, and a dispute within the scope of the contract is still a condition precedent to arbitration); *United States for Use of HDR Enterprises, LLC v. MV Indus., Inc.*, 2010 WL 11626661 at *8 (D.N.M. Jan. 12, 2010) (claims asserted must be "reasonably related to the parties' contract" in order to be arbitrable (citing *Coors Brewing Co.*, 51 F.3d at 1516)).

The Operating Agreement merely sets forth the TPC membership's respective rights and duties, as they relate to the ownership, sale, and transfer of membership shares, the respective responsibilities and roles of LLC members and the Board, and other similar basic terms governing the LLC's formation and operations. *See generally* Dkt. 36-4. Plaintiffs' claims, conversely, chiefly concern Mr. Thibault's theft, fraud, and misappropriation of funds from all of the Plaintiff entities (not just TPC), and Ms. Thibault's and G&N's participation in such misconduct. *See generally* Dkt. 24. None of the claims asserted by Plaintiffs assert a breach of the Operating

Agreement, depend on an interpretation of the terms and conditions of the Operating Agreement, or even require a passing reference to the Operating Agreement. *Cf. P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (claims with a significant relationship to an agreement, regardless of the label attached to them, arise out of and are related to the agreement for arbitration purposes). By Defendants' logic, any tort or misconduct (i.e., a "dispute" as Defendants state)—no matter how tangentially related to the Operating Agreement, if at all—would warrant arbitration, which would be an unconscionable and absurd result. Thus, Defendants' arguments that the Amended Complaint must be dismissed in order for the parties to arbitrate their dispute must fail.

> i. *To the Extent Arbitration is Required Under the Operating Agreement, the Present Lawsuit Should Be Stayed Instead of Dismissed.*

Assuming for the sake of argument that Plaintiffs' claims as to Ms. Thibault and G&N must be arbitrated, Defendants' request to dismiss the Amended Complaint under FED. R. CIV. P. 12(b)(1) is inappropriate and contrary to the Federal Arbitration Act.

Defendants cite an unpublished decision that simply states that a district court must "stay or dismiss" a lawsuit if an agreement requires arbitration. Dkt. 36 at pp. 4-5; *see Whispering Pines West Condominium Ass'n, Inc. v. Great Am. Ins. Co. of New York*, 2022 WL 807268 at *2 (Mar. 17, 2022).[4] However, where a lawsuit involves claims for relief (federal or state) that are subject to arbitration, the court nonetheless retains jurisdiction over the action and the claims, thereby requiring a stay instead of dismissal. *See Meyer v. Dans Un Jardin, S.A.*, 816 F.2d 533, 538 (10th Cir. 1987) (district court erred by dismissing claims, instead of staying them, when submitting the

---

[4] Of note, the *only* claim for relief in *Whispering Pines* was a demand for arbitration and, therefore, because the court found that arbitration was warranted, it recommended closing the case. *Id.* at *6.

claims to arbitration). This is because Section 3 of the Federal Arbitration Act contemplates continuing supervision by the district court to ensure that arbitration proceedings are conducted within a reasonable period of time, thus preventing any impairment of the plaintiffs' rights to seek relief. *Id.* at 538-39; *see also* 9 U.S.C. § 3 (requiring a stay, not dismissal, of a federal court action until the claims at issue are arbitrated). Defendants' requested dismissal of the action based on the TPC Operating Agreement's arbitration provision is therefore overbroad.

### b. Plaintiffs Have Alleged Sufficient Facts to State a Plausible Claim for Relief under RICO.

A recurring theme throughout Defendants' Motion is their misapplication of established standards for motions to dismiss, and this error is especially apparent throughout Defendants' discussion of Plaintiffs' first claim for relief under RICO. *See generally* Dkt. 36 at pp. 7-11. In particular, in an effort to dismiss the RICO claim, Defendants either brush aside Plaintiffs' specific *factual* allegations as "conclusory," or simply introduce their own interpretations of the facts and references to alleged non-parties at fault in order to rebut Plaintiffs' allegations.[5] *Id.* In submitting their claim under RICO, Plaintiffs did far more than simply recite the elements of a RICO action or summarily conclude that Defendants committed RICO violations, as Defendants contend.

#### i. Plaintiffs Have Plausibly Alleged Defendants' Operation of and Participation in an Enterprise.

The elements of a claim under 18 U.S.C. § 1962(c)[6] are 1) investment in, control of, or

---

[5] A "conclusory" statement is one that expresses a "factual inference without stating the underlying facts on which the inference is based." Conclusory, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, in the Rule 12(b)(6) context, this term is often applied to disregard allegations in a complaint when they either parrot the elements of a cause of action (without more), or purport to establish an essential element of the claim without any underlying facts that would support the conclusion. *See Watson v. Vista Outdoor, Inc.*, 2016 WL 11523306 at *3 (D. Colo. June 29, 2016); *see, e.g. Proxima Asset Mgmt., Ltd. v. Skinner*, 2009 WL 130326 at *1 (D. Colo. Jan. 20, 2009) (allegation that plaintiff was a successor in interest to another corporate entity for standing purposes, without more, was conclusory).
[6] The Amended Complaint does not specify which subpart of Section 1962 applies to Plaintiffs' first claim for relief,

conduct of; 2) an enterprise; 3) through a pattern; 4) of racketeering activity.  *Llacua v. Western Range Ass'n*, 930 F.3d 1161, 1176 (10th Cir. 2019).  Regarding the first element, Defendants assert that Plaintiffs failed to allege that either Ms. Thibault or G&N participated in the operation or management of the enterprise at issue.  Dkt. 36 at p. 9 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)).  Specifically, Defendants argue that Ms. Thibault's simple receipt of "the benefits of a life insurance policy" as a surviving widow and lone beneficiary, as well as both Defendants' receipt of money that Plaintiffs "intentionally deposited," cannot constitute the operation or management of an enterprise.  *Id.*

Defendants essentially ask the Court to rewrite the alleged facts in order to fit Defendants' interpretation of what the facts actually are, which is *not* the purpose of Rule 12(b)(6).  As alleged, for example, Ms. Thibault did not just apply for and receive life insurance benefits as a bereaved widow.  Rather, she knew that Mr. Thibault purchased the Policy and paid premiums toward the Policy with Plaintiffs' money, repeatedly and over time, and without permission or authorization from Plaintiffs.  Dkt. 24 ¶¶ 28(d), 29-30, 47-50.  Further, Defendants' assertion that their innocent receipt of money intentionally deposited by Plaintiffs cannot constitute the operation or management of an enterprise is misleading, as it ignores the specific facts detailing that Ms. Thibault and G&N knowingly accepted this money under false pretenses in the guise of consulting fees and 3% loan fees, notwithstanding that the consulting work never took place and Independent Bank never charged the loan fees at issue.  *See* Dkt. 24 ¶¶ 22-25, 27, 28(a-c), 28(e), 31-35.

---

but the plain language of the complaint shows that Section 1962(c) applies to Plaintiffs' claims against Ms. Thibault and G&N, as Plaintiffs have expressly alleged that both Defendants were associated with an enterprise engaged in interstate commerce and conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c); *see* Dkt. 24 ¶¶ 22-25, 27-28, 31-35, 37-52 (alleging with specificity that Ms. Thibault and G&N participated in the enterprise at issue by, among other things, knowingly accepting monies for their consulting services which they never performed).

Accordingly, the facts alleged by Plaintiffs (which *must* be taken as true) demonstrate Ms. Thibault and G&N played a crucial role in the effectuation of a RICO enterprise which damaged Plaintiffs.

### ii. Plaintiffs Have Plausibly Alleged the Existence of an Enterprise Contemplated by RICO.

Defendants then argue that Plaintiffs failed to plausibly allege the existence of an enterprise under RICO, and otherwise failed to plead the details of the enterprise or the racketeering activity at issue with sufficient particularity under FED. R. CIV. P. 9(b). Dkt. 36 at pp. 9-11. Again, in an effort to sidestep Rule 12(b)(6)'s requirement that all factual allegations must be taken as true and interpreted in the light most favorable to Plaintiffs, Defendants attempt to discredit Plaintiffs allegations as "implausible" or "conclusory" by arguing their own version of the facts and referencing matters completely outside of the Amended Complaint.[7]

Defendants first contend that the purported enterprise is legally insufficient because it lacks the requisite structure for RICO enterprises created by associations-in-fact.[8] Dkt. 36 at p. 10. Under RICO, an "enterprise" based on an association-in-fact must have 1) a purpose; 2) relationships among those associated with the enterprise; and 3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Plaintiffs have sufficiently pleaded all three of these structural requirements. The purpose of the enterprise, as alleged, was to siphon money from the Plaintiffs over time, without their

---

[7]Many of Defendants' arguments contest Plaintiffs' original allegations in their previous complaint (Dkt. 1). Dkt. 36 at p. 10. These arguments are irrelevant and inapplicable, as the Amended Complaint supplanted and replaced the original complaint when Plaintiffs filed it as a matter of course under FED. R. CIV. P. 15. *See, e.g. Stritch v. United States*, 2010 WL 148269 at *1 (D. Colo. Jan. 11, 2010) (the filing of an amended complaint moots a motion to dismiss directed at the "complaint that is supplanted and superseded").

[8]Defendants similarly argue that there is no enterprise because Ms. Thibault never participated in Plaintiffs' businesses, and never had an operational or management role with Plaintiffs. Dkt. 36 at pp. 7-8. This argument misses the point, as an "enterprise" is not confined to a formal business operation, and may include, as Plaintiffs allege, an association among individuals with a common purpose. *See Boyle v. United States*, 556 U.S. 938, 945-46 (2009) (rejecting the interpretation of "enterprise" as confined to "businesslike entities").

consent, and under various false pretenses; including consulting fees for work by Ms. Thibault and G&N which never happened and which was never authorized by Plaintiffs, payments for 3% loan fees which were never imposed by Independent Bank,[9] and payments towards a life insurance policy for Mr. Thibault, with Ms. Thibault as beneficiary, that was never authorized by Plaintiffs. Dkt. 24 ¶¶ 33-35, 39-40, 43-44, 47-48.  Mr. Thibault, Ms. Thibault, and G&N were related by, among other things, Mr. and Mrs. Thibault's ownership and operation of G&N and the use of G&N as a front for receiving fraudulent consulting fees and bank loan fees.  *Id.* ¶¶ 12-13, 17, 21, 27-28, 31-35, 39, 43, 47.  The enterprise itself operated over a period of *years*, and even continued *after* Mr. Thibault's death.  *Id.* at ¶ 28, 37.  Thus, the existence of an enterprise as alleged is not based on "conclusory" allegations, but rather specific facts, and Defendants' Motion must fail.

### iii.  *Plaintiffs Have Pleaded Racketeering Activity with Sufficient Particularity.*

Defendants then contend that because the alleged enterprise is premised on predicate acts involving fraud, Plaintiffs failed to plead the nature of the predicate racketeering activity with sufficient particularity under FED. R. CIV. P. 9(b) (although Defendants reach this conclusion without any discussion whatsoever).  Dkt. 36 at p. 10.  This is simply untrue, as the Amended Complaint sets forth the "who, what, where, when, and how" needed for any allegations of fraud— in this case, mail and wire fraud as contemplated by 18 U.S.C. § 1961(1)—and provides more than fair notice of Plaintiffs' claims and the factual grounds upon which they are based.  *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (discussing pleading standards under Rule 9(b), including that the complaint set forth the time, place, and contents of the false

---

[9]In the Motion, Defendants describe the fraudulent 3% loan fees as agreed-upon "consideration" paid to Mr. and Ms. Thibault as the personal guarantors of Plaintiffs' debt—again in a bald attempt to rewrite the facts alleged in the Amended Complaint. Dkt. 36 at p. 3. This wholesale mischaracterization of the Amended Complaint allegations, as written, is highly inappropriate.

representations, the identity of the party making the false statements, and consequences thereof).

The Amended Complaint sets forth, in detail, the fraud perpetuated by Mr. Thibault in his capacity as CFO, wherein he caused *hundreds* of unauthorized mail and wire transactions from June 4, 2015 to February 2, 2022 from the individual Plaintiffs under the guise of nonexistent consulting fees and loan fees imposed by Independent Bank, as well as the purchase of and premium payments towards the AIG Policy. Dkt. 24 ¶¶ 22-25, 27-28, 31-32, 37-38, 41-43, 45-47, 49-50. The "consequences" of Mr. Thibault's false representations and resulting fraud (as well as Ms. Thibault's and G&N's tacit participation in the fraudulent enterprise), is the loss of millions of dollars, which Plaintiffs described with particularity as to the amounts lost by the respective Plaintiff, the nature of the fraud leading to the specific loss, and the timing of the losses. *Id.*

However, in response, Defendants again argue that the transactions were actually authorized and done with Plaintiffs' knowledge and, therefore, the RICO action must be dismissed. Dkt. 36 at pp. 10-11. Defendants even cite their own designations of non-parties at fault as "proof" that the predicate RICO acts alleged are implausible. Dkt. 36 at p. 10-11 (citing their own designations of non-parties at fault (Dkt. 25) and referencing a January 2022 meeting outside of the pleadings to state that the transactions alleged were known by Plaintiffs and authorized with the help of an outside CPA).[10] Again, the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint's allegations, not to present facts in an attempt to rebut the allegations. *See Estate of Goodwin v. Connell*, 376 F. Supp. 3d 1133, 1144 (D. Colo. 2019). Defendants' continued references to contrary "facts" outside of the pleadings further demonstrates the futility

---

[10]To the extent Defendants' reliance on materials outside of the Amended Complaint convert Defendants' Motion into a motion for summary judgment on Plaintiffs' RICO claim, the motion must be denied as there are genuine issues of material fact that preclude summary judgment. At a minimum, Plaintiffs must be allowed to take discovery under FED. R. CIV. P. 56(d) in order to address Defendants' fact allegations before the motion can be decided.

of the present Motion, as Defendants cannot rebut that the Amended Complaint, *as written*, pleads

sufficient *facts* to state a plausible claim for relief under RICO.  The Motion must be denied.[11]

### c. The Probate Exception Does Not Require Dismissal Under FED. R. CIV. P. 12(b)(1).

Defendants also contend that the *entire Amended Complaint* must be dismissed under Rule

12(b)(1) and the Probate Exception because the Plaintiffs seek to reach property currently in the

custody of the Probate Court (in the form of a constructive trust) and have requested an accounting

of the Estate and the Trust.  Dkt. 36 at pp. 11-17.  Defendants' arguments regarding the Probate

Exception must fail for multiple reasons.

#### i. Defendants' Application of the Probate Exception is Too Broad.

First, Defendants' interpretation and application of the Probate Exception is far too broad.

The Probate Exception to federal jurisdiction is "narrow," and merely reserves to state probate

courts the probate or annulment of a will and the administration of a decedent's estate, while also

prohibiting federal courts from endeavoring to dispose of property that is in the custody of the state

probate court.  *Marshall v. Marshall*, 547 U.S. 293, 305, 311-12 (2006).  Thus, federal courts may

adjudicate matters outside of those confines and otherwise within federal jurisdiction—even when

doing so may impact the state probate court's performance of its reserved tasks.  *Id.* at 311-12;

*Dunlap v. Nielsen*, 771 F. App'x 846, 850 (10th Cir. 2019).  As long as a federal court is not 1)

---

[11]Defendants do not substantively argue that the "pattern" element of Plaintiffs' RICO claim is insufficiently alleged, other than to say that Plaintiffs have not alleged "a plausible pattern of racketeering activity," without more (Dkt. 36 at p. 11). But, assuming Defendants argue that the allegations regarding the required pattern are insufficient, such arguments must fail. As noted, Plaintiffs have pleaded, with particularity, an ongoing and continuing pattern of related fraudulent racketeering activity which occurred hundreds of times over a period of seven years—and even continued after Mr. Thibault's death. Dkt. ¶¶ 28(a-f), 28(a) n.5, 37; *see also Johnson v. Heath*, 56 F.4th 851, 858-59 (10th Cir. 2022) (pattern of racketeering activity requires the predicate acts to be related to each other and to amount to a threat of continued racketeering activity).

directly participating in the probate or annulment of a will; 2) administering the decedent's estate, or; 3) directly disposing of property in the state court's custody, then the Probate Exception simply does not apply. *Dunlap*, 771 F. App'x at 850.

Regarding the third prohibited activity, the key factor to consider as to whether a claim is potentially barred by the Probate Exception is whether it is an *in personam* claim intended to determine the personal rights and obligations of the parties, or an *in rem* action intended to determine the rights of the parties to property held by a court (the *res*). *Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 214 (D.S.C. 2019). *In personam* actions will not implicate the Probate Exception, even though a judgment may be enforceable against the judgment debtor and all of the property of the judgment debtor (including, possibly, property held in probate). *Id.*; *see also Wolfram v. Wolfram*, 78 F. Supp. 3d 758, 766 (N.D. Ill. 2015) (fraud and breach of fiduciary duty claims were *in personam* and did not fall under the Probate Exception).

### ii. *Plaintiffs are Not Attempting to Litigate the Same Claims in Federal Court and State Probate Court.*

Initially, Defendants contend that the present action is "duplicative" of the Probate Matter because Plaintiffs filed a claim against the Estate in the Probate Matter and attached their original complaint to the claim. Dkt. 36 at pp. 2, 16; Dkt. 36-3 (Exhibit C to Defendants' Motion). In other words, Defendants assert that Plaintiffs are already litigating their claims for relief (including RICO, fraud, conspiracy, civil theft, etc.) in the Probate Matter and that the Probate Court has not yet adjudicated the claims. *Id.* However, the probate claim merely attaches the original complaint in order to show the facts and circumstances supporting Plaintiffs' status as Estate creditors, and does not purport to ask the Probate Court to decide issues of individual liability as to Ms. Thibault

or G&N.[12]  Defendants argument that Plaintiffs are therefore attempting to litigate the same claims in two different venues is therefore nonsensical.

### iii.   All of Plaintiffs' Claims Against Ms. Thibault and G&N are in personam.

Apart from generally asserting that the Probate Exception operates to preclude *all* of Plaintiffs' claims, Defendants raise *no* arguments as to Plaintiffs' specific claims for relief and why they are covered by the Probate Exception.   Even a cursory reading of the Amended Complaint, however, shows that Plaintiffs are seeking to recover *damages* based on the *individual liability* of Ms. Thibault (individually and as Trustee)[13] and G&N based on their tortious conduct, breaches of the Loan Guarantees,[14] and/or unjust enrichment.   *See* Dkt. 24 ¶¶ 52, 65-66, 68, 76-78, 91-92, 98-100, 105-107, 116, 125.   In other words, the Plaintiffs' claims and requested relief are precisely the sort of claims that do not fall within the Probate Exception—even though adjudicating the personal rights and liabilities of the parties may ultimately have an impact on the Probate Court's eventual administration of the Estate.   *See Dunlap*, 771 F. App'x at 850; *see also Parks v. Kiewel*, 2015 WL 7295457 at *3-4 (D. Kan. Nov. 18, 2015) (damages sought against an individual defendant personally, plus interest, do not implicate the Probate Exception); *Popple v. Crouse*, 2007 WL 2071627 at *1-2 (D. Conn. July 13, 2007) (unjust enrichment, conversion, theft, and breach of fiduciary duty claims not barred by the Probate Exception).

### iv.   Defendants' Arguments as to Plaintiffs' Limited Requests for Relief for a Possible Constructive Trust (as Related to Life Insurance Proceeds Paid to

---

[12]Under COLO. REV. STAT. § 15-12-803(1)(a)(III), Plaintiffs were *required* to submit claims as creditors against the Estate within one year of Mr. Thibault's death, or else they would have been time-barred.

[13]Plaintiffs' claims against Ms. Thibault as Trustee do not implicate the Probate Exception because the entire purpose of a trust is to dispose of property *outside* of probate. *See In re Estate of Scott*, 77 P.3d 906, 909 (Colo. Ct. App. 2003) (property outside of a probate estate, such as a trust, is nontestamentary property that is not subject to administration under applicable laws relating to estates); *Parks v. Kiewel*, 2015 WL 7295457 at *3 (D. Kan. Nov. 18, 2015) (decedent's property disposed of outside of probate is not subject to the Probate Exception).

[14]*See* Dkt. 24 ¶¶ 15, 81-88 for a discussion of the loan guarantees at issue.

*Ms. Thibault Personally) and an Accounting are Misplaced.*

Because Defendants cannot rebut that the individual *claims* raised by Plaintiffs against them are *in personam*, Defendants instead attempt to throw the baby out with the bathwater by arguing that certain narrow, specific *requests for relief* are *in rem* claims that warrant dismissing the entire action under the Probate Exception.

Defendants first contend that Plaintiffs' reference to a constructive trust in paragraph 79 of the Amended Complaint requires dismissal of the entire action because Plaintiffs are seeking a constructive trust over assets still within the Probate Court's control. Dkt. 36 at pp. 15-16. This argument is grossly misleading, as paragraph 79 (which is a part of Plaintiffs' unjust enrichment claim) only states the following: "Plaintiffs are entitled to all necessary relief in equity; such as, **by way of example, a constructive trust/equitable lien over the paid life insurance proceeds under the Policy.**" Dkt. 24 ¶ 79 (emphasis added).[15]

As written, Defendants' Motion insinuates that Plaintiffs are seeking a constructive trust over all assets under the custody of the Probate Court, which is not true. *See* Dkt. 36 at p. 15 (citing paragraph 79 to assert that Plaintiffs "continue to ask this Court to impose a constructive trust upon assets in the Estate"). Plaintiffs *only* use a constructive trust as an example of a form of relief appropriate in the context of the life insurance proceeds received by Ms. Thibault *individually* as the beneficiary to the Policy. As alleged, Ms. Thibault has already filed a claim for benefits under the Policy, and AIG has already paid the benefits to her personally. Dkt. 24 ¶¶ 29,

---

[15]Defendants reference paragraph 79 of the Amended Complaint to aver that the as-filed Amended Complaint and the redlined version attached as an exhibit to Plaintiff's Notice of Filing the Amended Complaint (Dkt. 23; Dkt. 23-1) "do not appear to be the same." Dkt. 36 at p. 15 n. 4. Plaintiffs are baffled by this assertion, and if Defendants had looked closer at the two paragraphs, they would have seen that the paragraphs (and, indeed, the entire redlined version of the Amended Complaint and the as-filed version) are *identical*. *Compare* Dkt. 23-1 *with* Dkt. 24. But, Defendants are correct that, to the extent there are any discrepancies between the two filings, they are an unintentional oversight.

30, 75. Since these proceeds are in Ms. Thibault's personal possession, there is no Probate Exception issue regarding the limited constructive trust reference in Paragraph 79. *See Wolfram*, 78 F. Supp. 3d at 767 (constructive trust request that was directed to assets in the defendant's personal possession—rather than any assets in the possession of a state court—did not implicate the Probate Exception). Thus, to the extent Defendants argue that the Amended Complaint must be dismissed under the Probate Exception based on paragraph 79 of the Amended Complaint, such arguments must fail.

Defendants' arguments as to Plaintiff's accounting request are similarly unavailing.[16] In their Prayer for Relief, Plaintiffs simply request an accounting of all money and property currently held by the Special Administrator and the Trust. Dkt. 24 at p. 27. First, a request for an accounting of a trust's assets does not fall under the Probate Exception since, logically, trust assets are outside the ambit of probate administration. *See Hynie*, 441 F. Supp. 3d at 214 (federal courts have "routinely held" that accounting claims implicating trusts do not implicate the Probate Exception because they do not require the disposal of any *res* held by a probate court (citing *Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007))). Regarding the Estate, a simple accounting request *alone* does not implicate the Probate Exception because the request is not a form of relief that only the Probate Court could administer and, more importantly, does not require interference with or disposition of any *res* currently under the Probate Court's supervision. *See Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 534 (S.D.N.Y. 2010).

Thus, the Plaintiffs' accounting request does not warrant application of the Probate

---

[16]To their credit, Defendants do not contend that the request for an accounting mandates dismissal of the entire action. Dkt. 36 at pp. 16-17.

Exception but, even if it does, this issue does not require dismissal of the Amended Complaint, and Defendants' Motion must be denied.

### d. Plaintiffs Have Sufficiently Alleged that the Claims Against N. Thibault, in her Capacity as Trustee, Are Ripe.

Defendants contend that all claims against Ms. Thibault as Trustee of the Trust must be dismissed under Rule 12(b)(1) as unripe. Dkt. 36 at pp. 17-19. Defendants' entire unsupported ripeness theory hinges on one proposition: The Trust was and is unfunded, and tort and contract claims against a trustee of an unfunded trust are not ripe for resolution. *See id.*

Defendants cite *no* legal authority whatsoever (and Plaintiffs are aware of none) which stands for the blanket proposition that courts lack jurisdiction over claims for relief—whether in contract, tort, equity, or statutory—against unfunded trusts or the trustees of the same under principles of ripeness. *See id.* Further, even if an unfunded trust and its trustee cannot be sued due to ripeness issues, Defendants' entire argument is premised on their unsupported assertion that the Trust was at all relevant times (and currently is) unfunded, and therefore Ms. Thibault has not and may never engage in any misconduct in her capacity as Trustee. *See id.* at pp. 4, 17-19.

Once again, Defendants apparently believe that by alleging differing versions of the facts in their Motion which conflict with the factual allegations stated in the Amended Complaint, they may defeat Plaintiff's claims under either Rule 12(b)(1) or 12(b)(6). *See, e.g. Sutton*, 173 F.3d at 1236 (the court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial). Even under Rule 12(b)(1)'s permissive allowance of outside documentation and affidavits to resolve jurisdictional disputes, Defendants' *only* support for the allegation that the Trust was and is unfunded is their self-serving and unsupported statements in the Motion itself, rather than any actual evidence. *See Stuart*, 271 F.3d at 1225 (court must accept

complaint allegations as true under Rule 12(b)(1) when a jurisdictional challenge is premised on the complaint allegations only).

Setting this issue aside, nothing in the Amended Complaint even implies that the Trust is unfunded, or that the residual pour-over provisions in Mr. Thibault's will were the *only* source of funding for the Trust. To the contrary, the allegations of the Amended Complaint tell a much different story. Both Mr. Thibault's will and the Trust were executed on May 20, 2011, and Ms. Thibault was named as Trustee at that time. Dkt. 24 ¶¶ 17-19, 21. Per the will's own provisions, the property owned by Mr. Thibault, not specifically bequeathed in the will, would be "**added to the property** of [the Trust]" and disposed of per the Trust's terms. *Id.* ¶ 17 (emphasis added). Nothing in this language or in Plaintiffs' allegations even suggests that Mr. Thibault's residual estate would be the *only* property held by the Trust.

Further, apart from Defendants' unsubstantiated allegations in the Motion, there is no reason to believe at this time that, between May 20, 2011 and Mr. Thibault's death, no property was ever added to the Trust and the Trust remained unfunded the entire time. Plaintiffs have *expressly alleged* that their money was misdirected to both Ms. Thibault in her various capacities *and* the Trust itself during Mr. Thibault's lifetime, thereby (wrongfully) funding the trust. *See, e.g.* Dkt. 24 ¶¶ 17, 19. Similarly, Plaintiffs have alleged that Mr. Thibault is in breach of the Loan Guarantees and that his interests in the same have poured over into the Trust, further demonstrating a present case and controversy for resolution. *Id.* ¶ 92.

Last, Defendants boldly state that Plaintiffs' allegation that the Trust was funded during Mr. Thibault's lifetime constitutes a possible FED. R. CIV. P. 11 violation. Dkt. 36 at p. 18. This is highly inappropriate. Plaintiffs' original complaint allegations were entirely sufficient to

warrant their claims against the Trust and Ms. Thibault as Trustee (*see generally* Dkt. 1) but, in the interest of clarifying their prior allegations, Plaintiffs further alleged in good faith that the Trust was funded based on both the plain language of the will and Ms. Thibault's wrongful course of conduct in accepting stolen funds from Mr. Thibault. Dkt. 24 ¶ 19. There is nothing wrongful about such allegations, and Defendants' Rule 11 threats are unwarranted.

In short, because Defendants' entire ripeness argument hinges on their own self-serving and unsupported theories of law and factual allegations, Defendants' Motion must fail.

## IV. CONCLUSION.

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint must be denied.

Dated this 28th day of March, 2023.

Respectfully submitted,

**CAMPBELL LITIGATION, P.C.**

By: /s/*Stacey A. Campbell*
      Stacey A. Campbell
      Robert Thomas
      1410 North High Street
      Denver, Colorado 80218
      Tel: (303) 536-1833
      Email: stacey@campbell-litigation.com
             robert@campbell-litigation.com

      **Attorneys for Plaintiffs**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 28, 2023, a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS NICOLE M. THIBAULT AND G&N, LLC'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT [ECF NO. 24]** was filed and served via CM/ECF on all counsel of record, including the following:

Scott D. McLeod
Joseph A. O'Keefe
McLeod │ Brunger PLLC
10375 Park Meadows Drive, Ste. 260
Lone Tree, CO 80124
Tel: (720) 443-6600
Email: smcleod@mcleodbrunger.com
       jokeefe@mcleodbrunger.com

***Attorneys for Nicole Thibault individually, and
G&N Consulting, LLC***

Zachary Schlichting
Wade Ash LLC
4500 Cherry Creek Drive South
Suite 600
Denver, CO 80248
Tel: (303) 329-2235
Email: zschlichting@wadeash.com

***Attorney for Nicole Thibault as Trustee***

Christopher P. Montville
Haddon Morgan Foreman
950 Seventeenth Street, Suite 1000
Denver, CO 80202
Tel: (720) 287-5831
Email: cmontville@hmflaw.com

***Attorney for Marcie R. McMinimee
in her capacity as Special Administrator
of the Estate of Glenn Michael Thibault***

                                      */s/ Lisa Forbes*
                                        Lisa Forbes, Paralegal